UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                                No. 95-CR-000538-MV

VINCENT NAJAR,

        Defendant.

### AMENDED[1] MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant Vincent Najar's Supplemental Motion for a Sentence Reduction Pursuant to the First Step Act. Doc. 2642. The government filed a response [Doc. 2646] and Mr. Najar filed a reply [Doc. 2650]. Having considered the briefs, relevant law, and being otherwise fully informed, the Court finds that the motion is well-taken and will be **GRANTED**. Exercising its authority under Section 404(b) of the First Step Act of 2018 and 18 U.S.C. § 3582(c)(1)(B), the Court will impose a reduced sentence of 311 months and 5 days of imprisonment in this case.

### BACKGROUND

This case began in October 1995, when at the approximate age of 21 Mr. Najar was arrested along with 22 other co-defendants.[2] Doc. 2651 at Pages 1–4 ("PSR"). He was later named in more than 30 counts of a Third Superseding Indictment [Doc. 2634 Ex. 2] charging him with numerous drug, weapons, and violent offenses as part of an extensive Racketeer Influenced and Corrupt

---

[1] This order amends the Court's previous order [Doc. 2652] for arithmetical error under Rule 35(a) of the Federal Rules of Criminal Procedure. Due to a miscalculation, the Court previously believed that a reduced sentence of 317 months of imprisonment would achieve a sentence close to time served. It now understands that a reduced sentence of 311 months and 5 days will achieve that result.

[2] Mr. Najar's PSR lists three posible birthdates but ultimately lists his date of birth as August 7, 1974, making him 21 years old at the time of arrest. *See* PSR at Page 1.

1

Organizations (RICO) conspiracy he participated in as a member of the Sureño 13 gang, which "maintained control over the War Zone [area of Albuquerque] for several years, from the Fall of 1993 through the Fall of 1995." PSR at ¶¶ 8–9. Sureño 13 was comprised of "expatriate gang members" from California [Doc. 2642 at 12] and its members "took over drug sales in the War Zone by preventing the drug sales of other gangs and individuals through intimidation or violence," including drive-by shootings and several homicides. PSR at ¶ 10. Mr. Najar's supplemental motion explains that he joined Sureño 13 after he graduated from high school in 1993 and his family moved to Albuquerque from California. Doc. 2642 at 11–12.

Although Mr. Najar was among the members of Sureño 13 initially facing the death penalty for their alleged crimes [*id.* at 12], on June 1, 1999, he entered into a Rule 11(c)(1)(C) plea agreement in which he agreed to plead guilty to Counts 1, 3, 26, 27, and 28 of the Third Superseding Indictment, charging him with RICO, in violation of 18 U.S.C. §§ 1961, 1962(c), and 1963(a) (Count 1); Conspiracy to Distribute 5 Grams and More of Cocaine Base, in violation of 21 U.S.C. §§ 841(b)(1)(B) and 846 (Count 3); and Firearms Murder During and in Relation to a Drug Trafficking Crime and Aiding and Abetting, in violation of 18 U.S.C. §§ 2 and 924(i)[2](1) (Counts 26, 27, and 28). Doc. 2376 at 2; *see also* Doc. 2634 Ex. 2. In exchange, the government agreed to a specific sentence of 360 months, or 30 years, of imprisonment in the case. Doc. 2376 at 3. The plea agreement did not break down the agreed-upon sentence by count or offense; it simply stated that "360 months [of] imprisonment is the appropriate disposition of this case." *Id*. The agreement did, however, list the minimum and maximum penalties for each count, including "imprisonment for a period of not less than 5 years nor more than 40 years" on Count 3, the cocaine base conspiracy count. *Id*. at 2.

Mr. Najar came before the Court for sentencing on August 30, 1999. *See* Doc. 2638 at 22 ("Sentencing Transcript"). After hearing argument from the parties, the Court remarked that the case was a "tragedy from all perspectives" and for "everyone that has been involved." *Id*. at 37:23–24. It continued that Mr. Najar was "such a young man to be going to jail for 30 years" given that he had not even lived 30 years yet himself and given that he was at one time a "very bright young kid doing well in school" before getting involved in drugs and "living the kind of life that [he was] living for those couple of years." *Id*. at 38:10–21. The Court nevertheless concluded that the 30-year sentence required by the Rule 11(c)(1)(C) plea agreement was "fair," "appropriate," and "the right thing to do in this case" based upon everything that it knew at the time of sentencing. *Id*. at 39:1–4. The Court accordingly accepted the plea agreement and sentenced Mr. Najar to 360 months of imprisonment on each of Counts 1, 3, 26, 27, and 28, to run concurrently, followed by five years of supervised release. *Id*. at 39:11–40:2.

That did not mark the end of Mr. Najar's legal troubles in the District of New Mexico, however. On March 6, 2001, he was charged in case number 01-CR-291 as a result of his attempt to help co-defendant Marcos Mazzini escape from the Torrance County Detention Center just prior to their sentencing in this case. Doc. 2646 at 2. He pled guilty to aiding and abetting an attempted escape from custody in January 2002 and was sentenced by Judge LeRoy Hansen to 48 months of imprisonment, 36 of which were to run consecutive to his sentence in the instant case. *Id*. at 2–3.

His previous requests for resentencing having been denied, Mr. Najar remains incarcerated in the BOP today. He is now approximately 46 years old and has been in continuous custody since his arrest in this case in October 1995 at the age of 21. As a result, Mr. Najar has spent well over half of his life, and virtually all of his adult life, behind bars. According to the BOP, his current release date is May 21, 2024, or approximately 3.5 years from today. *See* "Find an inmate,"

Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Nov. 2, 2020). In the instant motion, he asks the Court to impose a reduced sentence of time served under Section 404 of the First Step Act so that he can begin serving his period of supervised release in New Mexico, where he hopes to "care for his aged mother," "unite with his daughter, who was conceived just before [he] went into custody in 1995," and "demonstrate to the Court that he has learned, from the hardest lessons of all, to follow all laws, remain drug free, manage his anger, avoid physical confrontations and obey all of the conditions of his supervised release." Doc. 2642 at 4. The government asks the Court to deny Mr. Najar's motion for lack of standing and because he is "not the type of non-violent drug offender" contemplated by the First Step Act. Doc. 2646 at 3–6.

## STANDARD

To understand the sentencing reform Congress passed in the First Step Act and the Fair Sentencing Act before it, one must first go back to 1986. That year, Congress passed the Anti-Drug Abuse Act, 100 Stat. 3207, which among other things introduced the so-called "100-to-1" sentencing disparity between crack and powder cocaine. *See Kimbrough v. United States*, 552 U.S. 85, 96 (2007). The disparity came from the respective amounts of each drug required to trigger the mandatory minimums in 21 U.S.C. §§ 841(b)(1)(A) and (B): under the Act, 5 grams of crack or *500 grams* of powder cocaine triggered a five-year mandatory minimum, and 50 grams of crack or *5,000 grams* of powder cocaine triggered a ten-year mandatory minimum. *See id*.

As the Supreme Court describes in *Kimbrough v. United States*, the United States Sentencing Commission initially incorporated the 100-to-1 disparity into the Sentencing Guidelines through the base offense levels assigned to offenses involving crack and powder cocaine. *See id*. at 97. The Commission later changed its position, however, and advocated for the reform of the disparity after concluding that it was unwarranted and led to a number of

4

problematic outcomes. *Id*. First, the Commission noted that assumptions about the relative harmfulness of crack as compared with powder cocaine were no longer supported by research, pointing for example to a finding that "the negative effects of prenatal crack cocaine exposure are identical to the negative effects of prenatal powder cocaine exposure." *Id*. at 98 (citations omitted). Second, the Commission concluded that the disparity ran counter to the statutory purpose of punishing major drug traffickers more severely than low-level dealers because "[d]rug importers and major traffickers generally deal in powder cocaine, which is then converted into crack by street-level dealers." *Id*. As a result, the sentencing disparity led to "the anomalous result that retail crack dealers [got] longer sentences than wholesale drug distributors who suppl[ied] them the powder cocaine from which their crack [was] produced." *Id*. (internal quotations and citations omitted). Finally, the Commission noted that the 100-to-1 disparity "foster[ed] disrespect for and a lack of confidence in the criminal justice system" because of the widely held perception that it "promote[d] unwarranted disparity on the basis of race." *Id*. The Commission also found that the racial disparity was more than just speculative: a 2002 report stated that because 85 percent of the federal defendants convicted of crack offenses were black, the significantly harsher penalties created by the 100-to-1 sentencing disparity were imposed "primarily upon black offenders." *Id*. (citations omitted).

After describing these concerns, the Supreme Court in *Kimbrough* held that sentencing courts are permitted to vary downwards from a defendant's guidelines range on the basis of the crack to powder disparity. *See id*. at 111. Two years later, in *Spears v. United States*, 555 U.S. 261 (2009) (per curiam), the Court strengthened *Kimbrough*'s holding, clarifying that "district courts are entitled to reject and vary categorically from the crack cocaine Guidelines based on a policy disagreement with those Guidelines." *Id*. at 265–66. Although these decisions allowed

courts to reject the crack to powder disparity insofar as it existed in the Sentencing Guidelines, they did nothing to alter the 100-to-1 disparity that continued to persist in the mandatory minimums imposed by statute. *See id.* at 262.

Then, in 2010, Congress changed the law with the passage of the Fair Sentencing Act, Pub. L. No. 111-220, 124 Stat. 2372 (2010). In Section 2 of the Act, Congress raised the amount of crack cocaine required to trigger the five-year mandatory minimum in 21 U.S.C. § 841(b)(1)(B)(iii) from 5 grams to 28 grams and the amount required to trigger the ten-year mandatory minimum in 21 U.S.C. § 841(b)(1)(A)(iii) from 50 grams to 280 grams. *See* 124 Stat. 2372. In so doing, Congress reduced the crack to powder sentencing disparity from 100-to-1 to roughly 18-to-1. *See Dorsey v. United States*, 567 U.S. 260, 264 (2012). It declined, however, to extend retroactive relief to those who had been sentenced under the disparately harsh crack penalties in effect prior to the passage of the Act. *See* 124 Stat. 2372–75.

That changed eight years later with the passage of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5194-249 (2018). Section 404 of the Act, titled "Application of the Fair Sentencing Act," states "[a] court that imposed a sentence for a covered offense may, on motion of the defendant… impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) were in effect at the time the covered offense was committed." 132 Stat. 5222. A "covered offense" is "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372), that was committed before August 3, 2010." *Id*. Subsection (c) of Section 404 lists two situations in which resentencing under the Act is not permitted: (1) where a defendant has already been sentenced or resentenced under the statutory amendments introduced by the Fair Sentencing Act; and (2) where a defendant has already been

denied resentencing under the First Step Act after a complete review of their motion on the merits. *Id*. Section 404(c) also leaves the decision to impose a reduced sentence to the discretion of the reviewing court, stating that "nothing under this section shall be construed to require a court to reduce any sentence pursuant to this section." *Id*.

## DISCUSSION

The Court has now reviewed Mr. Najar's supplemental motion [Doc. 2642], probation's memorandum [Doc. 2645], the government's response in opposition [Doc. 2646], and Mr. Najar's reply [Doc. 2650]. It has also reviewed Mr. Najar's PSR from 1999 [Doc. 2651], the transcript of his August 30, 1999 sentencing hearing [Doc. 2638], and the judgment in this case [Doc. 2398]. The Court finds that Mr. Najar is eligible for a reduced sentence under Section 404 of the First Step Act and 18 U.S.C. § 3582(c)(1)(B); that he has Article III standing to bring the instant motion because the unitary sentence the Court imposed as a result of his Rule 11(c)(1)(C) plea agreement allows it to reduce his sentence on all counts, unlike in *United States v. Mannie*, 971 F.3d 1145 (10th Cir. 2020); and that the sentencing factors set forth in 18 U.S.C. § 3553(a) weigh in favor of a reduced sentence allowing Mr. Najar to return home to New Mexico to be with his family and begin the five-year term of supervised release he has yet to serve.

### I. Mr. Najar is Eligible for a Reduced Sentence Under Section 404 of the First Step Act.

The Court first finds that Mr. Najar is eligible for a reduced sentence under Section 404 of the First Step Act. The parties agree that he was sentenced by this Court prior to August 3, 2010 for a "covered offense": namely, his conviction on Count 3 of the Third Superseding Indictment for Conspiracy to Distribute 5 Grams and More of Cocaine Base, in violation of 21 U.S.C. §§ 841(b)(1)(B) and 846. *See* Doc. 2398 at 1; *see also* Doc. 2646 at 3 ("The United States concedes that Najar is eligible for relief because he was convicted of a covered offense, that being Count 3

7

of the third superseding indictment in this case."). At the time of sentencing, that count carried a mandatory minimum term of imprisonment of five years and a statutory maximum of 40 years. *See* PSR at ¶ 266 (citing 21 U.S.C. § 841(b)(1)(B)). However, as discussed above, Section 2 of the Fair Sentencing Act raised the amount required to trigger the five-year minimum to 28 grams, meaning that Count 3 would no longer be subject to the same mandatory minimum today [*see* 124 Stat. 2372] and it would also be subject to a reduced 20-year statutory maximum term of imprisonment under 21 U.S.C. § 841(b)(1)(C). Mr. Najar was therefore convicted of a "violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010." *See* 132 Stat. 5222. Nor do any of the limitations on resentencing in Section 404(c) of the Act apply because Mr. Najar has not previously received a sentence reduction based on the Fair Sentencing Act nor has he applied for relief under the First Step Act before. *See id.* Mr. Najar accordingly meets all of the enumerated requirements for resentencing under Section 404 of the First Step Act.

## II.     Mr. Najar Has Article III Standing to Bring His First Step Act Motion.

Although the government concedes that Mr. Najar is statutorily eligible for resentencing under the First Step Act, it argues that he lacks Article III standing to bring his motion under the Tenth Circuit's recent decision in *Mannie*. Doc. 2646 at 4. There, the Tenth Circuit considered the consolidated appeals of Arthur Mannie and Michael Maytubby, two criminal defendants whose motions for resentencing under the First Step Act had been denied at the district court level. *Mannie*, 971 F.3d at 1148. The Tenth Circuit began by explaining that "[i]n general, once a court has imposed a sentence, the court has no authority to modify that sentence." *Id.* Congress provided for an exception to that general rule in 18 U.S.C. § 3582(c)(1)(B), however, which states that a court may modify an imposed term of imprisonment "to the extent otherwise expressly permitted

8

by statute." *Id*. Where a defendant seeks a reduced sentence under the First Step Act, it is that Act, along with the Fair Sentencing Act of 2010, that "expressly permit" resentencing through § 3582(c)(1)(B). *Id*.

The Tenth Circuit then discussed the particulars of the appellants' cases. In 2006, a jury convicted Mr. Maytubby of eight counts relating to his participation in a drug trafficking organization, including one count of Conspiracy to Distribute Cocaine Base in violation of 21 U.S.C. §§ 841(a)(1) and 846. *Id*. at 1150. He was subsequently sentenced to 295 months of imprisonment in the BOP, including three concurrent sentences of 235 months on the drug conspiracy count and two other unnamed counts. *Id*. The three concurrent sentences were later reduced to 188 and then 151 months due to favorable amendments to the United States Sentencing Guidelines. *Id*. at 151.

Turning to the merits of Mr. Maytubby's appeal, the Tenth Circuit found that he was eligible for relief under the First Step Act because of his sentence for a "covered" crack cocaine offense. *Id*. at 1152. It nevertheless found that he lacked Article III standing to bring his motion because his concurrent 151-month sentences on the two "non-covered" offenses "would be unaffected even if he were to prevail on his 2018 [First Step Act] claim." *Id*. at 1153. The Tenth Circuit explained that "the only injury that can be alleged in a [First Step Act] motion is the ongoing incarceration" and a defendant therefore only has standing to bring such a motion "to the extent that the court could redress [their] ongoing incarceration." *Id*. at 1154 It continued that where "an offender has been sentenced concurrently, the court can only redress the ongoing incarceration to the extent that some portion of the incarceration is solely dependent on the sentence of the crack cocaine offense that might be reduced" under the First Step Act. *Id*. The Tenth Circuit then concluded that because § 3582(c)(2) did not give it the authority to reduce Mr.

Maytubby's two concurrent sentences on the non-covered offenses, his motion failed to present a live controversy under Article III and had to be dismissed for lack of standing. *Id*.

The government argues that Mr. Najar's motion should be similarly dismissed for lack of standing because, like Mr. Maytubby, he is serving concurrent sentences for non-covered offenses. Doc. 2646 at 4. The Court agrees that *Mannie* requires district courts to dismiss motions for relief under the First Step Act where the defendant asking for relief is serving concurrent sentences on non-covered offenses that were unaffected by the sentence for the covered crack offense. Although *Mannie*'s reasoning is opaque, the Court believes that this holding is based on the language in Section 404 of the First Step Act that permits courts to "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010… were in effect at the time the covered offense was committed." 132 Stat. 5222. In a case where a defendant has concurrent sentences on non-covered offenses that are unrelated to his sentence on the covered crack offense, imposing a reduced sentence "as if sections 2 and 3 of the Fair Sentencing Act of 2010… were in effect at the time the covered offense was committed" would not involve reducing the defendant's sentences on the non-covered offenses because those sentences did not depend upon the statutory penalties for the covered offense. And in that scenario, the defendant would lack standing to bring a First Step Act motion under *Mannie* because no portion of his term of imprisonment is "solely dependent on the sentence of the crack cocaine offense." 971 F.3d at 1154.

The Court does not believe, however, that *Mannie*'s holding extends to cases such as this one where the defendant applying for First Step Act relief is serving concurrent sentences on covered and non-covered offenses that were all imposed as part of a single collective sentence stemming from a Rule 11(c)(1)(C) plea agreement. Whereas in *Mannie*, Mr. Maytubby's sentence was a product of the Court's consideration of the individual counts of which he was convicted at

trial, here Mr. Najar's sentence was a product of the Court's consideration and acceptance of his Rule 11(c)(1)(C) plea agreement, which stipulated that a sentence of 360 months of imprisonment was the appropriate disposition of the *entire case*. Doc. 2376 at 3. That distinction matters to the standing analysis because, in this case, imposing a reduced sentence "as if sections 2 and 3 of the Fair Sentencing Act" were in effect at the time Mr. Najar committed his covered crack offense does not just implicate his sentence on that count; it implicates his entire Rule 11(c)(1)(C) plea agreement and the aggregate sentence it specified as to *all counts*. After all, when Mr. Najar chose to enter into the agreement and accept the 30-year sentence it required, he was facing a minimum of five years of imprisonment on the crack offense and could have received up to 40 years on that count alone. *See* Doc. 2376 at 2. If Mr. Najar was not facing a mandatory minimum on that count, and the count's statutory maximum was half as long, it is reasonable to assume that he would have sought an agreement with a shorter overall term of imprisonment. The Court would have also considered the applicable statutory penalties in deciding whether to accept the plea agreement or to reject it, as Rule 11 of the Federal Rules of Criminal Procedure permits it to do. *See* Fed. R. Crim. P. 11(c)(5). And as the transcript from Mr. Najar's sentencing hearing makes clear, the Court struggled with the fact that the agreement required it to sentence someone as young as Mr. Najar to 30 years of imprisonment, suggesting that it might have rejected the agreement had the statutory penalties for Count 3 been different. *See* Hearing Transcript at 37:23–39:4.

On the whole, the statutory penalties Mr. Najar faced on Count 3, the covered crack offense, affected his sentence on all counts because they affected the overall term of imprisonment that the parties negotiated as part of their Rule 11(c)(1)(C) plea agreement, a term of imprisonment that the Court ultimately accepted and imposed on each of Mr. Najar's five counts of conviction. The Court can accordingly reduce his sentence on all counts under Section 404 of the First Step

Act, which allows it to "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act" were in effect at the time he committed his covered offense. *See* 132 Stat. 5222. And because the Court can reduce Mr. Najar's sentence on all counts, he has stated a redressable claim giving rise to this Court's jurisdiction under Article III. *See Mannie*, 971 F.3d at 1153 ("An offender who challenges his conviction or his sentence has standing to do so because the ongoing incarceration constitutes an injury from which the defendant seeks relief in satisfaction of Article III.") (quoting *United States v. Meyers*, 200 F.3d 715, 718 (10th Cir. 2000)) (internal quotations omitted).

In finding that Section 404 of the First Step Act permits it to reduce Mr. Najar's sentence on all counts where his sentence for the covered offense affected his concurrent sentences for non-covered offenses, this Court is not alone. The Fourth Circuit first took up the issue in *United States v. Gravatt*, 953 F.3d 258 (4th Cir. 2020). There, the question was whether the district court had erred in deeming the defendant ineligible for First Step Act relief where he had been convicted of a conspiracy to distribute both crack cocaine and powder cocaine (the statutory penalties for which had *not* been modified by the Fair Sentencing Act of 2010). *Gravatt*, 953 F.3d at 260. The Fourth Circuit answered in the affirmative, stating "we see nothing in the text of the Act requiring that a defendant be convicted of a single violation of a federal criminal statute whose penalties were modified by section 2 or section 3 of the Fair Sentencing Act." *Id*. at 264. It continued that the government's position to the contrary would "in effect, impose an additional limitation to the Act's applicability. The Act sets forth the express limitations for its application in Section 404(c). If Congress intended for the Act not to apply if a covered offense was combined with an offense that is not covered, it could have included that language. But it did not. We decline to expand the limitations crafted by Congress."[3] *Id*. The Fourth Circuit concluded that because the defendant's

---

[3] As the United States District Court for the Central District of Illinois has similarly explained, to limit First Step Act resentencing to covered offenses would be to "impose an additional limitation not present in the

12

sentence involved a covered offense within the meaning of Section 404(a) and the limitations enumerated in Section 404(c) did not apply, the district court erred in refusing to review the defendant's First Step Act request on the merits. *Id*.

Several months later, the Seventh Circuit came to the same conclusion in *United States v. Hudson*, 967 F.3d 605 (7th Cir. 2020). The question there was whether the district court erred in finding that it could not reduce the defendant's sentence under the First Step Act because he was sentenced on a non-covered firearms offense as part of a single aggregate sentence with his covered crack offense. *Id*. at 610. The Seventh Circuit answered in the affirmative and held that the district court's interpretation of the First Step Act was in error. *Id*. It noted that the plain language of the Act "does not bar a court from reducing a non-covered offense" and that "the text of the First Step Act requires no more [than a single covered offense] for a court to consider whether it should exercise its discretion to reduce a single, aggregate sentence that includes covered and non-covered offenses." *Id*. The Seventh Circuit also repeated the Fourth Circuit's reasoning that "excluding non-covered offenses from the ambit of First Step Act consideration would, in effect, impose an extra-textual limitation on the Act's applicability." *Id*. Finally, it noted that "a court's consideration of the term of imprisonment for a non-covered offense comports with the manner in which sentences are imposed" because "[s]entences for covered offenses are not imposed in a vacuum, hermetically sealed off from sentences imposed for non-covered offenses." *Id*. at 611. Ultimately, the Seventh Circuit held that district courts can resentence defendants on non-covered

---

text of the law," namely: "a court that imposed a sentence for a covered offense may ... impose a reduced sentence <u>with respect to the covered offense</u> as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed." *United States v. Washington*, No. 03-CR-20045-JES-DGB, 2019 WL 4750575, at *3 (C.D. Ill. Sep. 30, 2019) (unreported) (emphasis in original).

13

offenses under the First Step Act as long as those non-covered offenses were part of an aggregate sentence that also included at least one covered crack cocaine offense.[4]  *Id.*

And in *United States v. Brown*, 974 F.3d 1137 (10th Cir. 2020), another First Step Act case decided by the Tenth Circuit after *Mannie*, the Tenth Circuit recognized that while relief under the First Step Act is circumscribed, the Act should not be given an unnecessarily narrow reading.  The issue there was whether the First Step Act requires a district court to continue to treat a defendant as a Career Offender under U.S.S.G. § 4B1.2(a) at his First Step Act resentencing where caselaw following his original sentencing shows that the initial Career Offender designation was in error. *Id.* at 1139–40.  The Tenth Circuit held that the First Step Act does not require such a result, stating "we decline to read Congress's intent as directing a district court to impose a sentence possibly predicated on a legal error."  *Id.* at 1146.  In so holding, the Tenth Circuit quoted *United States v. Kirby*, 74 U.S. 82 (1868) for the proposition that "[a]ll laws should receive a sensible construction" and noted that while allowing district courts to correct clear Guidelines errors on First Step Act resentencing implicates the finality of the corrected sentences, "[t]he First Step Act intentionally disrupts the rule of finality."  *Id*.  Responding to the argument that the First Step Act only permits district courts to consider "the level of punishment based on the weight of crack cocaine," the Tenth Circuit also remarked that "[s]entencing is multifaceted; it is the result of a complex intersection of laws and factual circumstances that give legitimacy to punishment. The court has discretion over whether to impose a reduced sentence at all, which illustrates that imposing a reduced sentence is not merely a mechanical substitution of one number for another."  *Id.* at 1142

---

[4] Other federal courts of appeals also seem poised to follow the interpretation of the First Step Act adopted by the Fourth and Seventh Circuits.  *See United States v. Mitchell*, ---Fed. Appx.---, 2020 WL 6117698, *2 (6th Cir. Oct. 16, 2020) (unpublished) (Stranch, J., concurring) (advocating that the Sixth Circuit adopt the approach of *Gravatt* and *Hudson* and listing cases from the Fifth and Eleventh Circuits that appear to do the same without explicitly deciding the issue).

14

n.1.  Although *Brown* deals with a distinct First Step Act issue, the Court believes that its reasoning supports the idea that the Act should not be given an overly mechanical or restrictive reading that is divorced from the reality of the sentencing process as well as Congress's intent.

Ultimately, the Tenth Circuit's decision in *Mannie* did not involve a defendant like Mr. Najar who received a single aggregate sentence on covered and non-covered offenses as a result of a Rule 11(c)(1)(C) plea agreement, and when the Fourth and Seventh Circuits considered similar cases with defendants whose sentences on covered and non-covered offenses had been aggregated at sentencing, they both found that Section 404 of the First Step Act permits resentencing on all counts.  *See Gravatt*, 953 F.3d at 264; *Hudson*, 967 F.3d at 610–11.  The Court accordingly finds that *Mannie* does not foreclose relief and that Mr. Najar has proper standing to bring his motion.

### III.     The Court Will Exercise Its Discretion to Reduce Mr. Najar's Sentence.

Having found that Mr. Najar is eligible for relief and has standing to bring his motion under the First Step Act, the Court also finds that a reduced sentence is warranted in this case.  In so doing, it considers the sentencing factors set forth in 18 U.S.C. § 3553(a), as it is permitted to do under *Mannie*.  *See id*. at 1158 n.18.  Mr. Najar's offense was undoubtedly serious: he facilitated Sureño 13's distribution of crack cocaine in the Albuquerque area and also aided and abetted brutal acts of violence intended to further the gang's objectives.  *See supra* at 1–2.  The Court does not intend to minimize these destructive crimes or their devastating effects on Sureño 13's victims and their families.  At the same time, Mr. Najar was only approximately 21 years old at the time of his arrest and he was even younger when he committed the acts for which he has spent the last 25 years of his life in prison.  Twenty-five years is a staggering amount of time to spend in prison, and at the age of 46 today, Mr. Najar has been incarcerated for longer than he has been a free man.

Fortunately, Mr. Najar has not wasted his time in custody: He reports that he has "faithfully pursued educational and psychological programs offered by the Bureau of Prisons," earning more than one hundred hours of college credits from four different community colleges in Southern California and an Associates Degree in Business Administration. Doc. 2642 at 3. He has also "taken a variety of self-improvement classes and… has remained drug and alcohol free during his imprisonment." *Id*. at 4. He now asks the Court to allow him to leave the BOP approximately three and half years early so that he can care for his aging mother, establish a relationship with a daughter that he has never met outside of prison, and begin to serve his remaining five years of supervised release. *Id*. The Court believes that the § 3553(a) factors weigh in favor of that result. Requiring Mr. Najar to remain in prison for another three and a half years would accomplish little in the way of rehabilitation and it would expose him to the continuing threat of COVID-19, which has ripped through our prisons and jails virtually unabated over the past eight months. Nor does the Court believe that allowing Mr. Najar's early release would present a danger to the community. He is a quarter-century removed from the violent acts he committed in his youth, and judging from his achievements while in custody, he is a changed man today. Mr. Najar will also remain under close supervision while on supervised release, and the Court will retain the ability to send him back to prison if he violates the law or his conditions of release.

For all of these reasons, the Court believes that a reduced sentence of approximately 26 years of imprisonment in this case is just punishment for Mr. Najar's offenses and is "sufficient, but not greater than necessary" to achieve the statutory purposes set forth in 18 U.S.C. § 3553(a).

## CONCLUSION

For the foregoing reasons, Mr. Najar's Supplemental Motion for a Sentence Reduction Pursuant to the First Step Act [Doc. 2642] is hereby **GRANTED**. Pursuant to its authority under

Section 404(b) of the First Step Act of 2018 and 18 U.S.C. § 3582(c)(1)(B), the Court hereby imposes a reduced sentence of 311 months and 5 days of imprisonment in the Bureau of Prisons as to Counts 1, 3, 26, 27, and 28 of indictment number 95-CR-000538. The Court's modified sentence represents 311 months and 5 days of imprisonment on Counts 1, 26, 27, and 28, to run concurrent, and 240 months of imprisonment on Count 3, also to run concurrent to all other counts.[5] The Court also reimposes concurrent five-year terms of supervised release on Counts 1, 26, 27, and 28, and a statutory maximum three-year term of supervised release on Count 3, also to run concurrent to the other terms. *See* 18 U.S.C. §§ 3559 and 3583. The same conditions of supervised release that the Court imposed in 1999 will also apply. *See* Doc. 2398. An amended judgment reflecting Mr. Najar's reduced sentence will be forthcoming.

Dated this 18th day of November, 2020.

_____
MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE

---

[5] The Court's reduced sentence on Count 3 represents the new statutory maximum for that count under 21 U.S.C. § 841(b)(1)(C) as amended by the Fair Sentencing Act of 2010.